UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

ELLIOTT JEROME JAMES,

              Petitioner,

                                   CASE NO. 2:10-CV-12909

    v.                                JUDGE DAVID M. LAWSON

                                   MAGISTRATE JUDGE PAUL KOMIVES

ROBERT NAPEL,

              Respondent.

_____/

## REPORT AND RECOMMENDATION

I.    <u>RECOMMENDATION</u>: The Court should conclude that petitioner's application for the writ of habeas corpus is barred by the one year statute of limitations contained in 28 U.S.C. § 2244(d). Accordingly, the Court should deny the petition. If the Court accepts this recommendation, the Court should also deny petitioner a certificate of appealability.

II.    <u>REPORT</u>:

A.    *Procedural Background*

      Petitioner Elliott James is a state prisoner, currently confined at the Marquette Branch Prison in Marquette, Michigan. Petitioner is serving a sentence of 10-30 years' imprisonment imposed as a result of his 2003 state court convictions for first degree home invasion, breaking and entering, and unlawfully driving away an automobile. The matter is before the Court on petitioner's application for the writ of habeas corpus pursuant to 28 U.S.C. § 2254. As grounds for the writ, plaintiff raises claims of ineffective assistance of trial and appellate counsel, as well as a claim that the trial court's restitution order leaves him destitute. Respondent filed an answer to the petition on February 3, 2011. Respondent argues, *inter alia*, that petitioner's application is barred by the statute of

limitations.

Petitioner's application and the state court record reveal the following time line of the state court proceedings:

- Petitioner was convicted on October 23, 2003, following a jury trial in the Oakland County Circuit Court. On November 13, 2003, he was sentenced by the court.

- Petitioner, through counsel, appealed as of right to the Michigan Court of Appeals, raising through counsel two claims challenging his sentence. Petitioner filed a supplement *pro per* brief raising claims of prosecutorial misconduct and illegal arrest. On May 10, 2005, the court of appeals affirmed petitioner's conviction and sentence. *See People v. James*, No. 253248, 2005 WL 1106363 (Mich. Ct. App. May 10, 2005) (per curiam).

- Petitioner filed an application for leave to appeal in the Michigan Supreme Court, raising the four claims that he raised in the Michigan Court of Appeals. On December 5, 2005, the Supreme Court denied petitioner's application for leave to appeal. *See People v. James*, 474 Mich. 946, 706 N.W.2d 200 (2005).

- On July 10, 2008, petitioner filed a motion for relief from judgment in the trial court pursuant to MICH. CT. R. 6.500-.508, raising the ineffective assistance and restitution claims asserted in his habeas petition.[1] The trial court denied the motion on September 17, 2008. *See People v. James*, No. 03-191406-FH (Oakland County, Mich., Cir. Ct. Sept. 17, 2008).

- Petitioner filed a delayed application for leave to appeal in the Michigan Court of Appeals. The court of appeals denied petitioner's application in a standard order on November 2, 2009. *See People v. James*, No. 293024 (Mich. Ct. App. Nov. 2, 2009).

- Petitioner thereafter filed an application for leave to appeal in the Michigan Supreme Court. The Supreme Court denied petitioner's application in a standard order on March 29, 2010. *See People v. James*, 485 Mich. 1129, 779 N.W.2d 808 (2010).

On July 13, 2010, petitioner filed this application for the writ of habeas corpus pursuant to

---

[1]In his form application, petitioner claims that the motion was filed on July 7, 200**7**. However, a copy of the motion filed with this Court is file-stamped by the Oakland County Clerk of Court on July 10, 200**8**, and the trial court docket filed by respondent similarly indicates a filing date of July 10, 200**8**. As the discussion below will make clear, this one year discrepancy does not affect the resolution of the limitations issue.

28 U.S.C. § 2254, raising the claims raised in his state court motion for relief from judgment.[2]

Respondent filed an answer to the petition on February 3, 2011. In addition to arguing that

petitioner's claims are without merit and barred by petitioner's procedural default in the state courts,

respondent's answer contends that petitioner's habeas application is untimely. Petitioner has not

filed a reply in support of his habeas application.[3] For the reasons that follow, the Court should

conclude that petitioner's application is untimely.

B.      *Analysis*

   1.      *Statutory Timeliness and Tolling*

Respondent argues that petitioner's application is barred by the one-year statute of

limitations governing habeas petitions. On April 24, 1996, President Clinton signed into law the

Antiterrorism and Effective Death Penalty Act (AEDPA), Pub. L. No. 104-132, 110 Stat. 1220 (Apr.

24, 1996). In relevant part, the AEDPA amended 28 U.S.C. § 2244 to provide a one year statute of

limitations for habeas petitions. Specifically, the statute as amended by the AEDPA provides:

> (1) A 1-year period of limitation shall apply to an application for a writ of
> habeas corpus by a person in custody pursuant to the judgment of a State court. The
> limitation period shall run from the latest of–
>    (A) the date on which the judgment became final by the conclusion of direct
> review of the expiration of the time for seeking such review;
>    (B) the date on which the impediment to filing an application created by State

---

[2]Although petitioner's application is file-stamped July 23, 2010, it is well-established that a habeas petition is deemed "filed" for purposes of the statute of limitations on the date the petitioner gives his motion to prison officials for mailing. *See In re Sims*, 111 F.3d 45, 47 (6th Cir. 1997); *Beckovich v. Coyle*, 22 F. Supp. 2d 722, 723 (N.D. Ohio 1998); *cf. Houston v. Lack*, 487 U.S. 266, 270 (1988). Petitioner's application is not signed and dated, but his application for leave to proceed *in forma pauperis*, contemporaneously filed with his habeas application, is dated July 13, 2010. Accordingly, I assume that the petition was given to prison officials for mailing, and was thus "filed," on July 13, 2010.

[3]In Magistrate Judge Whalen's Order Requiring Responsive Pleading, entered on July 29, 2010, petitioner was granted a period of 45 days from service of respondent's answer in which to file a reply. That time period has now lapsed.

action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;

(C) the date on which the constitutional right asserted was initially recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or

(D) the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.

(2) The time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward any period of limitation under this subsection.

28 U.S.C. § 2244(d).[4]

As the language of the statute indicates, there are four possible dates on which the limitations period may begin to run. Petitioner's claims do not implicate any of the delayed commencement dates set forth in subparagraphs (B) through (D); none of the claims relies on newly discovered evidence or new rules of constitutional law, and petitioner does not assert any state created impediment to filing. Thus, the default commencement date established by subparagraph (A) applies here. Under subparagraph (A) of § 2244(d),

a judgment of conviction does not become "final" . . . until the Supreme Court affirms the conviction and sentence on the merits or denies a timely filed petition for certiorari.

In addition, if a defendant does not file a certiorari petition, the judgment of conviction does not become "final" until the time for seeking certiorari review expires.

*Kapral v. United States*, 166 F.3d 565, 570-71 (3d Cir. 1999); *see also*, *United States v. Simmonds*, 111 F.3d 737, 744 (10th Cir. 1997) (conviction became final upon denial of certiorari); *Torres v. Irvin*, 33 F. Supp. 2d 257, 271 (S.D.N.Y. 1998) ("[A] judgment of conviction only becomes final upon the expiration of the ninety days to seek a writ of certiorari from the United States Supreme

---

[4]The AEDPA codified a one-year statute of limitations provision for motions to vacate federal convictions brought under 28 U.S.C. § 2255 which is nearly identical to the one found in § 2244(d)(1). *See* 28 U.S.C. § 2255 para. 6. Accordingly, cases discussing the § 2255 statute of limitations are applicable here.

Court."); *United States v. Dorsey*, 988 F. Supp. 917, 918 (D. Md. 1998) (same); *cf. Penry v. Lynaugh*, 492 U.S. 302, 314 (1989) (for purpose of determining whether application of new rule of law would be an impermissible retroactive application to a case which has already become final, conviction becomes final upon denial of the defendant's petition for certiorari); *Griffith v. Kentucky*, 479 U.S. 314, 321 n.6 (1987) ("By 'final,' we mean a case in which a judgment of conviction has been rendered, the availability of appeal exhausted, and the time for a petition for certiorari elapsed or a petition for certiorari finally denied.").

Here, petitioner's direct appeal concluded with the Supreme Court's denial of his application for leave to appeal on December 5, 2005. Petitioner's conviction became final 90 days later when the time for seeking *certiorari* in the United States Supreme Court expired, or on March 5, 2006. Thus, the one year limitation period began running on March 6, 2006, *see* FED. R. CIV. P. 6(a)(1)(A), and expired one year later on March 6, 2007. Because petitioner did not file his petition until July 13, 2010, it is untimely unless the limitations period was tolled for any reason.

Under § 2244(d)(2), the limitations period is tolled for "[t]he time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending[.]" Petitioner's motion for relief from judgment was filed in the trial court on July 10, 2008. By this time, however, the limitations period had been expired by over 16 months.[5] It is well established that subsection (d)(2) is a tolling provision and therefore a post-conviction motion only pauses the limitations clock; it "does not reset the date from which the one-year statute of limitations begins to run." *Smith v. McGinnis*, 208 F.2d 13, 17 (2d Cir. 2000); *see*

---

[5]Even accepting petitioner's representation of the filing date as July 7, 2007, the limitations period had been expired for over four months by the time he filed his state court motion for relief from judgment.

5

*also*, *Brooks v. McKee*, 307 F. Supp. 2d 902, 905 (E.D. Mich. 2004) (Gadola, J.).  Because petitioner's postconviction motion was filed after the limitations period had expired, there was no time remaining on the limitations period to toll, and thus petitioner's application is untimely.  *See Webster v. Moore*, 199 F.3d 1256, 1259 (11th Cir. 2000); *Jackson v. Dormire*, 180 F.3d 919, 920 (8th Cir. 1999) (per curiam); *Smith v. Stegall*, 141 F. Supp. 2d 779, 782-83 (E.D. Mich. 2001) (Gadola, J.); *Neal v. Bock*, 137 F. Supp. 2d 879, 884 (E.D. Mich. 2001) (Lawson, J.).

    2.    *Equitable Tolling*

    To be entitled to equitable tolling of the limitations period, petitioner "must show '(1) that he had been pursing his rights diligently, and (2) that some extraordinary circumstance stood in his way' and prevented timely filing."  *Lawrence v. Florida*, 549 U.S. 327, 336 (2007) (quoting *Pace v. Diguglielmo*, 544 U.S. 408, 418 (2005)).  "The petitioner bears the burden of establishing that he is entitled to equitable tolling."  *McClendon v. Sherman*, 329 F.3d 490, 494 (6th Cir. 2003).  Because petitioner has not filed a reply, he has not asserted any basis for equitably tolling the limitations period.  Further, petitioner's application and the briefs attached thereto do not suggest any basis upon which equitable tolling would be appropriate.  Notably, petitioner's *pro se* status or lack of knowledge of the law provide no basis for equitable tolling.  The Courts have uniformly held that neither a prisoner's *pro se* status nor his lack of knowledge of the law constitute extraordinary circumstances justifying equitable tolling *See Lattimore v. DuBois*, 311 F.3d 46, 55 (1st Cir. 2002); *Marsh v. Soares*, 223 F.3d 1217, 1220 (10th Cir. 2000); *Felder v. Johnson*, 204 F.3d 168, 171 (5th Cir. 2000); *Rodriguez v. Elo*, 195 F. Supp. 2d 934, 936 (E.D. Mich. 2002) (Rosen, J.).  Further, neither the importance or merit of petitioner's claims provides a basis for equitable tolling.  The very existence of a statute of limitations presupposes that meritorious claims will not be considered when

they are not diligently pursued. *See Steele v. United States*, 599 F.2d 823, 828-29 (7th Cir. 1979). For this reason, "[t]he tolling exception is not an open-ended invitation to the courts to disregard limitation periods simply because they bar what may be an otherwise meritorious cause." *School Dist. of the City of Allentown v. Marshall*, 657 F.2d 16, 20 (3d Cir. 1981). Thus, neither the importance nor the merit of petitioner's constitutional claims provides a basis for equitably tolling the limitations period. *See Rouse v. Lee*, 339 F.3d 238, 251-52 (4th Cir. 2003) (en banc).

Finally, the Sixth Circuit has held that the actual innocence exception, which allows a court to review the merits of a habeas claim notwithstanding a procedural default, likewise exists for the habeas statute of limitations. *See Souter v. Jones*, 395 F.3d 577, 598-602 (6th Cir. 2005). In order to be entitled to the actual innocence exception, however, a petitioner must present "new and reliable evidence that was not presented at trial" that "show[s] that it is more likely than not that no reasonable juror would have found him guilty beyond a reasonable doubt." *Schlup v. Delo*, 513 U.S. 298, 299 (1995). "To establish the requisite probability, the petitioner must show that it is more likely than not that no reasonable juror would have convicted him in light of the new evidence." *Schlup*, 513 U.S. at 327 (internal citation and quotation omitted). It is not sufficient to show merely that the evidence raises a reasonable doubt which did not otherwise exist. *See id.* at 329 ("The meaning of actual innocence . . . does not merely require a showing that a reasonable doubt exists in light of the new evidence, but rather that no reasonable juror would have found the defendant guilty."). "Examples of evidence which may establish factual innocence include credible declarations of guilt by another, trustworthy eyewitness accounts, and exculpatory scientific evidence." *Pitts v. Norris*, 85 F.3d 348, 350-51 (8th Cir. 1996) (citations omitted); *accord Schlup*, 513 U.S. at 324 (referring to "exculpatory scientific evidence, trustworthy eyewitness accounts, or

7

critical physical evidence").  *See generally*, *Souter*, 395 F.3d at 589-90.  Here, although petitioner

asserts that he is innocent, he has pointed to no new, reliable evidence which clearly establishes his

innocence.

As explained by the Michigan Court of Appeals:

This case arises out of multiple criminal acts, including a home invasion in which defendant and his accomplice, Daniel Carpenter, entered an occupied home without permission at around 5:00 a.m. on June 13, 2003, and removed a purse that contained a wallet, cell phone, credit cards, cash, a checkbook, and keys. Defendant and Carpenter proceeded to drive to a gas station, purchased gas and other items with the stolen cash, and hatched a plan to break into an adjacent party store to steal cigarettes. But before committing the B & E, they returned to the scene of the home invasion to steal an automobile that was sitting in the driveway. Defendant and Carpenter planned to utilize the vehicle in perpetrating the B & E at the store. Because the keys to the vehicle were in the purse stolen from the home, defendant and Carpenter had no difficulty in taking the car. Next, they made a stop to grab a brick and garbage can for use in the B & E. They then went to the party store where defendant smashed a glass door with the brick, gained entry, removed about sixty cartons of cigarettes, and stuffed the cartons in the garbage can. Carpenter acted as the lookout while defendant accomplished the larceny. The two thieves then absconded with the stolen goods. Defendant was later apprehended, as well as Carpenter, and Carpenter eventually testified against defendant at trial. Other witnesses who testified against defendant included the victims of the home invasion, a neighbor who saw two individuals running in the area, the gas station attendant, the party store owner, and a detective. Defendant spoke with police and did not admit or concede guilt; however, he was caught in several lies and made some incriminating remarks. Defendant did not call any witnesses to testify in his defense.

*James*, 2005 WL 1106363, at *1 (footnote omitted).  As explained by the court of appeals, the

evidence against petitioner included not only Carpenter's extensive testimony implicating petitioner,

but also the testimony of a gas station attendant who identified petitioner as one of the men who

pulled into the gas station around the time of the crime and walked to the party store, which was next

door, and surveillance photos showing petitioner at the gas station in a car matching the car stolen

in the home invasion.  *See* Def.-Appellant's Br. on Appeal, in *People v. James*, No. 253428 (Mich.

Ct. App.), at 7-12.

In support of his ineffective assistance of counsel claims, petitioner points to two pieces of evidence which he contends counsel should have presented. Neither, however, establishes his actual innocence. First, petitioner points to an affidavit by his brother-in-law, Stanford Meeks. In this affidavit, dated June 26, 2008, Meeks avers that Carpenter called him at 4:00 a.m. on June 12, 2003, to come pick up petitioner from Carpenter's home. When Meeks picked up petitioner, petitioner did not possess any items such as the goods stolen in the home invasion and breaking and entering. *See* Mot. for Relief from Judgment, Ex. J.[6] This affidavit, however, does not provide reliable evidence of actual innocence in light of the trial evidence. First, it does not even provide an alibi, as the crimes occurred in the early morning hours of June 13, not June 12. In any event, this affidavit from a relative sworn to five years after the crimes does not constitute the type of reliable evidence sufficient to meet the actual innocence exception. New statements from witnesses years after the crime are inherently suspect, *see Schlup*, 513 U.S. at 331, and such statements are to be viewed with "a degree of skepticism." *Herrera*, 506 U.S. at 423 (O'Connor, J., concurring).

Petitioner also points to a letter purportedly written by Carpenter to petitioner's mother. This letter, far from exonerating petitioner, actually implicates him. While in the letter Carpenter states that he doesn't "blame" petitioner and admits that he implicated petitioner in order to curry favor with the police, the letter also speaks of "the wrong me and your son were doing," and admits to telling the police about "a few crimes that me and him did." He also states that although it "kills" him he thinks testifying against petitioner is "the right thing to do." *See* Mot. for Relief from Judgment, Ex. E. At best, this letter might have presented some further impeachment material for

---

[6]These materials are attached as exhibits to the motion for relief from judgment filed in the trial court, which has been filed in this Court by respondent. They are also attached to petitioner's habeas application, but the application includes a number of different briefs and exhibits in a somewhat scrambled order. For ease of reference, therefore, I cite to the state court materials.

counsel to use to suggest that Carpenter's motive for testifying was to receive leniency from the prosecutor.  However, Carpenter was already extensively impeached on this basis.  Thus, this letter does not lead to the conclusion that it is more probable than not that a jury faced with this impeachment testimony would have acquitted petitioner, particularly given that the Carpenter was substantially impeached at trial even without this evidence.  *See Ballinger v. Kerby*, 3 F.3d 1371, 1375 (new evidence which "only cast doubt upon the testimony of [petitioner's] primary accuser" did not establish actual innocence under *Schlup*); *see also*, *Patterson v. Bartlett*, 56 Fed. Appx. 762, 763-64 (9th Cir. 2002); *United States v. Zuno-Arce*, 25 F. Supp. 2d 1087, 1100 (C.D. Cal. 1998), *aff'd on other grounds*, 209 F.3d 1095 (9th Cir. 2000), *adhered to in part on reh'g on other grounds*, 339 F.3d 886 (9th Cir. 2003); *cf. Calderon v. Thompson*, 523 U.S. 538, 561-64 (1998).[7]

In view of the foregoing, the Court should conclude that petitioner's application is untimely, and that he is not entitled to equitable tolling.  Further, the Court should conclude that petitioner has failed to establish his actual innocence with new, reliable evidence sufficient to overcome the limitations bar.  Accordingly, the Court should deny petitioner's application for the writ of habeas corpus.

C.    *Recommendation Regarding Certificate of Appealability*

1.    *Legal Standard*

As amended by the Antiterrorism and Effective Death Penalty Act, section 2253 provides that a petitioner may not appeal a denial of an application for a writ of habeas corpus unless a judge

---

[7]Petitioner also contends that his mother, who died in 2006, would have testified at trial that Carpenter had called her from jail and admitted that petitioner did not commit the crime with him. However, there is no affidavit or testimony to this effect in the state court record or attached to petitioner's habeas application, and in any event an affidavit averring as much from petitioner's mother would not constitute reliable evidence for the same reason that the affidavit of petitioner's brother-in-law fails to constitute such evidence.

issues a certificate of appealability. *See* 28 U.S.C. § 2253(c)(1). The statute further provides that "[a] certificate of appealability may issue . . . only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). As the Sixth Circuit has noted, this language represents a codification of the Supreme Court's decision in *Barefoot v. Estelle*, 463 U.S. 880 (1983), and "[t]he AEDPA thus makes no change to the general showing required to obtain a certificate[.]" *Lyons v. Ohio Adult Parole Auth.*, 105 F.3d 1063, 1073 (6th Cir. 1997); *accord Slack v. McDaniel*, 529 U.S. 473, 483 (2000). Although the statute does not define what constitutes a "substantial showing" of a denial of a constitutional right, the burden on the petitioner is obviously less than the burden for establishing entitlement to the writ; otherwise, a certificate could never issue. Rather, the courts that have considered the issue have concluded that "'[a] substantial showing requires the applicant to "demonstrate that the issues are debatable among jurists of reason; that a court could resolve the issues (in a different manner); or that the questions are adequate to deserve encouragement to proceed further."'" *Hicks v. Johnson*, 186 F.3d 634, 636 (5th Cir. 1999) (quoting *Drinkard v. Johnson*, 97 F.3d 751, 755 (5th Cir. 1996) (quoting *Barefoot*, 463 U.S. at 893 n.4)); *accord Slack*, 529 U.S. at 483-84. Although the substantive standard is the same, "[t]he new Act does, however, require that certificates of appealability, unlike the former certificates of probable cause, specify which issues are appealable." *Lyons*, 105 F.3d at 1073. (citing 28 U.S.C. § 2253(c)(3)).

Effective December 1, 2009, the newly created Rule 11 of the Rules Governing Section 2254 Cases in the United States District Courts, 28 U.S.C. foll. § 2254, provides that "[t]he district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant." Rule 11(a), 28 U.S.C. foll. § 2254. The rule tracks § 2253(c)(3)'s requirement that any grant of a

11

certificate of appealability "state the specific issue or issues that satisfy the showing required by §
2253(c)(2)," Rule 11(a), but omits the requirement contained in the pre-amendment version of
Federal Rule of Appellate Procedure 22(b)(1) that the court explain "why a certificate should not
issue." FED. R. APP. P. 22(b)(1) (version effective prior to 2009 amendment); *see id.*, advisory
committee note, 2009 amendments.  In light of the new Rule 11 requirement that the Court either
grant or deny the certificate of appealability at the time of its final adverse order, I include a
recommendation regarding the certificate of appealability issue here.

  2. *Analysis*

  Where, as here, a petition is dismissed on a procedural basis, the inquiry under § 2253(c) is
two-fold.  In such a case, a certificate of appealability "should issue when the prisoner shows, at
least, that jurists of reason would find it debatable whether the petition states a valid claim of the
denial of a constitutional right *and* that jurists of reason would find it debatable whether the district
court was correct in its procedural ruling."  *Slack*, 529 U.S. at 485 (emphasis added).  As the Court
explained, "[w]here a plain procedural bar is present and the district court is correct to invoke it to
dispose of the case, a reasonable jurist could not conclude either that the district court erred in
dismissing the petition or that the petitioner should be allowed to proceed further.  In such a
circumstance, no appeal would be warranted."  *Id.* at 486.

  If the Court accepts the foregoing recommendation, petitioner cannot show that the Court's
ruling on the procedural question is reasonably debatable.  As noted above, petitioner's habeas
application is untimely by over a year, and petitioner has provided no basis for concluding that he
is entitled to equitable tolling.  Neither the importance nor merit of petitioner's claim provides a
basis for overcoming the limitations bar.  Thus, the resolution of the limitations issue is not

reasonably debatable, and the Court should conclude that petitioner is not entitled to a certificate of appealability.

D.    *Conclusion*

In view of the foregoing, the Court should conclude that petitioner's application for the writ of habeas corpus is barred by the statute of limitations governing habeas petitions. Accordingly, the Court should deny the petition. If the Court accepts this recommendation, the Court should also deny the certificate of appealability..

III.    NOTICE TO PARTIES REGARDING OBJECTIONS:

The parties to this action may object to and seek review of this Report and Recommendation, but are required to act within fourteen (14) days of service of a copy hereof as provided for in FED. R. CIV. P. 72(b). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Secretary of Health & Human Servs.*, 932 F.2d 505 (6th Cir. 1991); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981). Filing of objections which raise some issues but fail to raise others with specificity, will not preserve all the objections a party might have to this Report and Recommendation. *Willis v. Secretary of Health & Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Federation of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987). Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this Magistrate Judge.

Within fourteen (14) days of service of any objecting party's timely filed objections, the opposing party may file a response. The response shall be not more than five (5) pages in length unless by motion and order such page limit is extended by the Court. The response shall address specifically, and in the same order raised, each issue contained within the objections.

s/Paul J. Komives _____
PAUL J. KOMIVES
UNITED STATES MAGISTRATE JUDGE

Dated: 5/12/11

```
The undersigned certifies that a copy of the foregoing
order was served on the attorneys of record and   by
electronic means or U.S. Mail on May 12,  2011.

                          s/Eddrey Butts_____
                          Case Manager
```

14